# ORIGINAL

ncf1

Fisher And Fisher
File # 55299

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE HOLDERMAN

Mortgage Electronic Registration Systems, Inc.
    **Plaintiff**
VS.
Robert E. Carzoli and Susan M. Carzoli,
    **Defendant**

MAGISTRATE JUDGE BOBRICK
NO.: 03C 3373

This is an attempt to collect a debt and any information obtained will be used for that purpose.

## COMPLAINT FOR FORECLOSURE

Now comes Plaintiff, Mortgage Electronic Registration Systems, Inc., by its attorneys, FISHER AND FISHER, ATTORNEYS AT LAW, P.C., and, pursuant to Illinois Compiled Statutes, Chapter 735, Section 15, 15-1101 et seq., alleges the following:

1. Jurisdiction of this court is based upon diversity of citizenship. Plaintiff is a corporation incorporated under the laws of the STATE OF DELAWARE, having its principal place of business in the STATE OF VIRGINIA. Defendant mortgagors are citizens of the STATE OF ILLINOIS. This matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

2. Plaintiff files this complaint to foreclose the mortgage hereinafter described, and joins the following persons as defendants:

-Robert E. Carzoli, an Illinois Citizen
-Susan M. Carzoli, an Illinois Citizen

3. Attached as Exhibit "A" is a copy of the note, as Exhibit "B" is a copy of the mortgage and as Exhibit "C" is a copy of the assignment(s) secured thereby.

4. Information concerning mortgage:

(A) Nature of instrument: Mortgage

(B) Date of Mortgage: August 25, 2000

(C) Name of Mortgagor: Robert E. Carzoli and Susan M. Carzoli

(D) Name of Mortgagee: Fieldstone Mortgage Company

(E) Date and place of recording: September 1, 2000, DuPage County Recorder of Deeds Office

(F) Identification of recording: R2000-137187

(G) Interest subject to the mortgage: Fee Simple

(H) Amount of original indebtedness including subsequent advances made under the mortgage: $224,000.00

(I) Legal description and the common address:
Lot 2 in Block 9 in H.O. Stone and Company's Butterfield Road Addition to Elmhurst, being a Subdivision of part of Sections 13 and 14, Township 39 North, Range 11, East of the Third Principal Meridian, according to the plat thereof recorded April 5, 1927 as document 232923, in DuPage County, Illinois.
c/k/a 776 Mitchell Ave., Elmhurst, IL 60126
**Tax I.D.#06-14-202-013**

(J) Statement as to default now due:

1. Date of default: 12/2002.

2. Unpaid principal balance: $222,071.11.

3. Per diem interest accruing: $62.36.

(K) Name of present owners of the real estate:
Robert E. Carzoli and Susan M. Carzoli

(L) Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated:

NONE

(M) The following defendants, except those who have received a discharge of this debt in any chapter under the United States Bankruptcy Code, may be held personally liable for the deficiency, if any:

Robert E. Carzoli and Susan M. Carzoli

(N) Capacity in which plaintiff brings this foreclosure: Plaintiff is the owner and legal holder of said note, mortgage and indebtedness.

(O) Facts in support of request for attorneys' fees and of costs and expenses.

Plaintiff has been required to retain counsel for litigation of this foreclosure and to incur substantial attorney fees, court costs, title insurance or abstract costs and other expenses which should be added to the balance secured by said mortgage, and which are a lien upon said real estate being foreclosed, as provided in said mortgage.

5. Pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (1977), Defendant(s) may dispute the validity of the debt or any portion thereof. If Defendant(s) do so in writing within thirty (30) days of receipt of this pleading, Counsel for Plaintiff will obtain and provide Defendant(s) with written verification thereof; otherwise, the debt will be assumed to be valid. Likewise, if requested within thirty days (30) days of receipt of this pleading, Counsel for Plaintiff will send Defendant(s) the name and address of the original creditor if different from above.

## REQUEST FOR RELIEF

Plaintiff, Mortgage Electronic Registration Systems, Inc., requests:

(i) A judgment to foreclose such mortgage providing for a sale by public auction

(ii) An order granting a shortened redemption period, if authorized by law.

(iii) A personal judgment for a deficiency, if authorized by law.

(iv) An order granting possession.

(v) An order placing the mortgagee in possession or appointing a receiver if and when sought.

(vi) A judgment for attorneys' fees, costs and expenses including but not limited to payments for taxes, insurance, securing, inspections and other expenses of the plaintiff.

(vii) Enforcement of its assignment of rents derived from said real estate.

(viii) Such other relief as equity may require, including, but not limited to, declaratory and injunctive relief.

Plaintiff

Mortgage Electronic Registration Systems, Inc.

By: _____
One of Plaintiff's Attorneys

Attorneys for Plaintiff
FISHER AND FISHER
ATTORNEYS AT LAW, P.C. #3309
120 North LaSalle Street, Suite 2520
Chicago, IL 60602
(773) 854-8055
ARDC# 816108



**J.P. "RICK" CARNEY**
DUPAGE COUNTY RECORDER
SEP.01,2000    2:00 PM
OTHER    06-14-202-013
009 PAGES    R2000-137187

RETURN TO:
FIELDSTONE MORTGAGE COMPANY
11000 BROKEN LAND PKWY, #600
COLUMBIA, MD 21044

Prepared by: MELISSA PAYKEL

1408736317

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on August 25, 2000. The mortgagor is
ROBERT E. CARIOLI AND SUSAN M. CARIOLI, HUSBAND AND WIFE.,

("Borrower"). This Security Instrument is given to FIELDSTONE MORTGAGE COMPANY

which is organized and existing under the laws of MARYLAND, and whose address is 11000 BROKEN LAND PKWY, #600, COLUMBIA, MD 21044
("Lender"). Borrower owes Lender the principal sum of
TWO HUNDRED TWENTY FOUR THOUSAND & 00/100
Dollars (U.S. $ 224,000.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on September 1, 2030. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in DuPage County, Illinois:
LOT 2 IN BLOCK 9 IN H.O. STONE AND CO'S BUTTERFIELD ROAD ADDITION TO ELMHURST, BEING A SUBDIVISION OF PART OF SECTIONS 13 AND 14, TOWNSHIP 39 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED APRIL 5, 1927 AS DOCUMENT 232923, IN DUPAGE COUNTY, ILLINOIS.

Parcel ID #: 06-14-202-013
which has the address of 776 MITCHELL AVENUE, ELMHURST, [Street, City],
Illinois 60126 [Zip Code] ("Property Address");

ILLINOIS - Single Family - FNMA/FHLMC UNIFORM
INSTRUMENT Form 3014 9/90
Initials: _RC_
Amended 5/91
-6R(IL) (9608)
Page 1 of 6    VMP MORTGAGE FORMS - (800)521-7291





EXHIBIT B

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Initials: _RB_

-6R(IL) (9608)        Page 2 of 8        Form 3014 9/90

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

Initials: _____

Description: Du Page,IL Document-Year.DocID 2000.137187 Page: 3 of 9
Order: 3 Comment:

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

-6R(IL) (9608)          Page 4 of 6          Initials: _Roc_  
Form 3014 9/90

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

Initials: _RLC_

-6R(IL) (9408)      Page 5 of 6      Form 3014 9/90

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

- [X] Adjustable Rate Rider
- [ ] Graduated Payment Rider
- [ ] Balloon Rider
- [ ] VA Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Rate Improvement Rider
- [ ] Other(s) [specify]
- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
ROBERT E. CARZOLI -Borrower

_____ (Seal)
Susan M Carzoli -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

**STATE OF ILLINOIS,** DuPage County ss:

I, _the undersigned_, a Notary Public in and for said county and state do hereby certify that

_Robert E. Carzoli_

, personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that _he_ signed and delivered the said instrument as _his_ free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this _25th_ day of _Aug 2000_.

My Commission Expires: _____
Notary Public

-6R(IL) (9606)  Page 6 of 6  Form 3014 9/90

1406736317

# ADJUSTABLE RATE RIDER
(LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **twenty-fifth** day of **August 2000**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
**FIELDSTONE MORTGAGE COMPANY**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**776 MITCHELL AVENUE, ELMHURST, Illinois 60126**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **10.250** %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of **September, 2002**, and on that day every **SIXTH** month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR 6 MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) -Single Family- Fannie Mae Uniform Instrument**

-838U (9705)   Form 3138 6/94
Page 1 of 3   Initials:
VMP MORTGAGE FORMS - (800)521-7291

business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.250 % or less than 10.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.250 %.

**(E) Effective Date of Changes** My interest rate will never be less than 10.250%.

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by

-836U (9705)  Page 2 of 3  Initials: _____

Form 3138 8/94

Description: Du Page,IL Document-Year.DocID 2000.137187 Page: 8 of 9
Order: 3 Comment:

Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)  ROBERT E. CARZOLI _____ (Seal)
-Borrower                                                           -Borrower

_____ (Seal)  Susan M Carzoli _____ (Seal)
-Borrower                                                           -Borrower

_____ (Seal)  _____ (Seal)
-Borrower                        -Borrower

_____ (Seal)  _____ (Seal)
-Borrower                        -Borrower

-838U (9705)                    Page 3 of 3                    Form 3138 6/94

(City Wide Title Corp
850 W Jackson Blvd Ste 320
Chicago, IL 60607)



J.P. "RICK" CARNEY
DUPAGE COUNTY RECORDER
APR.26,2001 9:31 AM
OTHER 06-14-202-013
003 PAGES R2001-075538

MERS, INC.
NOMINEE FOR
HOUSEHOLD
FINANCE
COPY

This form was prepared by: Fieldstone Mortgage Company (Asha Farah) address:
11000 BROKEN LAND PKWY, #600, COLUMBIA, MD 21044 , tel. no.: (410) 772-7200

3761657    ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
11000 BROKEN LAND PKWY, #600, COLUMBIA, MD 21044
does hereby grant, sell, assign, transfer and convey, unto the ✱ SEE ATTACHED ADDENDUM

a corporation organized and existing under the laws of DELAWARE                                                    (herein "Assignee"),
whose address is ✱ SEE ATTACHED ADDENDUM
a certain Mortgage dated August 25, 2000                                                                                     , made and executed by
ROBERT E. CARZOLI AND SUSAN M. CARZOLI, HUSBAND AND WIFE,

to and in favor of FIELDSTONE MORTGAGE COMPANY                                                  upon the following described
property situated in DuPage                                            County, State of Illinois:
LOT 2 IN BLOCK 9 IN H.O. STONE AND CO'S BUTTERFIELD ROAD ADDITION TO ELMHURST
, BEING A SUBDIVISION OF PART OF SECTIONS 13 AND 14, TOWNSHIP 39 NORTH, RANGE
11, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF
RECORDED APRIL 5, 1927 AS DOCUMENT 232923, IN DUPAGE COUNTY, ILLINOIS.

**Recorded on 09-01-2000
Parcel ID #: 06-14-202-013
Property Address: 776 MITCHELL AVENUE ELMHURST, Illinois 60126
such Mortgage having been given to secure payment of
TWO HUNDRED TWENTY FOUR THOUSAND & 00/100                                                 ($   224,000.00   )
(Include the Original Principal Amount)
which Mortgage is of record in Book, Volume, or Liber No. N/A , at page N/A (or as No.
R2000-137187**) of the MORTGAGE Records of DU PAGE County,
State of Illinois, together with the note(s) and obligations therein described and the money due and to become due thereon with
interest, and all rights accrued or to accrue under such Mortgage.
TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and
conditions of the above-described Mortgage.

Illinois Assignment of Mortgage    12/95
-995(IL) (9604)    Amended 8/96
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 2    Initials: _____





EXHIBIT C

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on

SEP 0 1 2000



Witness BETTY D. JACKSON

Witness RUTH PEACOCK

Witness

Seal:

FIELDSTONE MORTGAGE COMPANY
(Assignor)

By: JAY W. JANG (Signature)
ASSISTANT VICE PRESIDENT



[SEAL: FIELDSTONE MORTGAGE CORPORATE COMPANY SEAL 1995 MARYLAND]

STATE OF MARYLAND
COUNTY OF HOWARD
ON SEP 0 1 2000 BEFORE ME, ASHA A. FARAH,
PERSONALLY APPEARED JAY W. JANG
ASSISTANT VICE PRESIDENT
PERSONALLY KNOWN TO ME (OR PROVED TO ME THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE PERSON(S) WHOSE NAME(S) IS/ARE SUBSCRIBED TO THE WITHIN INSTRUMENT AND ACKNOWLEDGED TO ME THAT HE/SHE/THEY EXECUTED THE SAME IN HIS/HER/THEIR AUTHORIZED CAPACITY(IES), AND THAT BY HIS/HER/THEIR SIGNATURE(S) ON THE INSTRUMENT THE PERSON(S), OR THE ENTITY UPON BEHALF OF WHICH THE PERSON(S) ACTED, EXECUTED THE INSTRUMENT.

WITNESS MY HAND AND OFFICIAL SEAL.

SIGNATURE Asha Farah
Asha Farah

[NOTARY SEAL: ASHA FARAH NOTARY PUBLIC FREDERICK COUNTY, MD]

3761657

-995(IL) (9909)    Page 2 of 2

# ADDENDUM

Mortgage Electronic Registration Systems, Inc., it successors and assigns, as nominee for Household Finance Corporation, its successors and assigns, G4318 Miller Rd., P.O. Box 2026, Flint, MI 48501-2026
(assignee)

Mers#: 1000460-000 3761657-4
Ph#: 1-888-679-6377

When Recorded, Mail and Return To:
HFS Wholesale Document Verification
977 Lamont Rd.
P.O. Box 1247
Elmhurst, Il 60126

3761657

JS 44
(Rev. 07/89)

55299

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

JUDGE HOLDERMAN

### DEFENDANTS
ROBERT E. CARZOLI, ET.AL

MAGISTRATE JUDGE BOBRICK

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __FAIRFAX__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __DUPAGE__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Fisher & Fisher, Attorneys At Law, PC
120 North LaSalle, Ste. 2520
Chicago, IL 60602
312-372-4784

ATTORNEYS (IF KNOWN)
03C 3373

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)
(PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

MORTGAGE FORECLOSURE - 28 U.S. 1332

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 362 Personal Injury—Med Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury—Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R & Truck ☐ 650 Airline Regs | ☐ 820 Copyrights ☐ 830 Patent | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / PERSONAL PROPERTY ☐ 370 Other Fraud | ☐ 690 Other | SOCIAL SECURITY | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | LABOR | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability |  | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS |  |  | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| ☒ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 |  |
| ☐ 240 Torts to Land |  | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 540 Mandamus & Other |  |  | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights |  |  |  |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $ $222,071.11

Check YES only if demanded in complaint
JURY DEMAND: ☐ YES ☐ NO

## VIII. REMARKS
In response to ☐ is not a refiling of a previously dismissed action
General Rule 2.21D(2) this case ☒ is a refiling of case number _____ of Judge _____

SIGNATURE OF ATTORNEY OF RECORD

MAY 21 2003

UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

55299

In the Matter of

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
-VS-
ROBERT E. CARZOLI. ET.AL

Case Number: 03C 3373

JUDGE HOLDERMAN

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

~~MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.~~

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME: ELIZABETH KAPLAN MEYERS | NAME: RENEE MELTZER KALMAN |
| FIRM: FISHER AND FISHER | FIRM: FISHER AND FISHER |
| STREET ADDRESS: 120 N. LASALLE STREET, SUITE 2520 | STREET ADDRESS: 120 N. LASALLE STREET, SUITE 2520 |
| CITY/STATE/ZIP: CHICAGO, IL 60602 | CITY/STATE/ZIP: CHICAGO, IL 60602 |
| TELEPHONE NUMBER: 312-372-4784 | FAX NUMBER: 312-372-4398 | TELEPHONE NUMBER: 312-372-4784 | FAX NUMBER: 312-372-4398 |
| E-MAIL ADDRESS: | E-MAIL ADDRESS: |
| IDENTIFICATION NUMBER: 6196562 | IDENTIFICATION NUMBER: 6198331 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME: MICHAEL S. FISHER | NAME: James R. Riegel |
| FIRM: FISHER AND FISHER | FIRM: FISHER AND FISHER |
| STREET ADDRESS: 120 N. LASALLE STREET, SUITE 2520 | STREET ADDRESS: 120 N. LASALLE STREET, SUITE 2520 |
| CITY/STATE/ZIP: CHICAGO, IL 60602 | CITY/STATE/ZIP: CHICAGO, IL 60602 |
| TELEPHONE NUMBER: 312-372-4784 | FAX NUMBER: 312-372-4398 | TELEPHONE NUMBER: 312-372-4784 | FAX NUMBER: 312-372-4398 |
| E-MAIL ADDRESS: | E-MAIL ADDRESS: |
| IDENTIFICATION NUMBER: 6216064 | IDENTIFICATION NUMBER: 6239016 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |

55299

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In the Matter of

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
-VS-
ROBERT E. CARZOLI. ET.AL

Case Number: **03C 3373**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME: ERIK E. BLUMBERG | NAME: MARC D. ENGEL |
| FIRM: FISHER AND FISHER | FIRM: FISHER AND FISHER |
| STREET ADDRESS: 120 N. LASALLE STREET, SUITE 2520 | STREET ADDRESS: 120 N. LASALLE STREET, SUITE 2520 |
| CITY/STATE/ZIP: CHICAGO, IL 60602 | CITY/STATE/ZIP: CHICAGO, IL 60602 |
| TELEPHONE NUMBER: 312-372-4784 | FAX NUMBER: 312-372-4398 | TELEPHONE NUMBER: 312-372-4784 | FAX NUMBER: 312-372-4398 |
| E-MAIL ADDRESS: | E-MAIL ADDRESS: |
| IDENTIFICATION NUMBER: 6226628 | IDENTIFICATION NUMBER: 6255891 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME: THOMAS J. DONAHUE | NAME: KENNETH J. JOHNSON |
| FIRM: FISHER AND FISHER | FIRM: FISHER AND FISHER |
| STREET ADDRESS: 120 N. LASALLE STREET, SUITE 2520 | STREET ADDRESS: 120 N. LASALLE STREET, SUITE 2520 |
| CITY/STATE/ZIP: CHICAGO, IL 60602 | CITY/STATE/ZIP: CHICAGO, IL 60602 |
| TELEPHONE NUMBER: 312-372-4784 | FAX NUMBER: 312-372-4398 | TELEPHONE NUMBER: 312-372-4784 | FAX NUMBER: 312-372-4398 |
| E-MAIL ADDRESS: | E-MAIL ADDRESS: |
| IDENTIFICATION NUMBER: 6201082 | IDENTIFICATION NUMBER: 6273676 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |

5529

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JUDGE HOLDERMAN

In the Matter of

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
-VS-
ROBERT E. CARZOLI, ET.AL

MAGISTRATE JUDGE BOBRICK

Case Number: 03C 3373

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME: KENNETH H. FISHER | NAME: BARRY M. FISHER |
| FIRM: FISHER AND FISHER | FIRM: FISHER AND FISHER |
| STREET ADDRESS: 120 N. LASALLE STREET, SUITE 2520 | STREET ADDRESS: 120 N. LASALLE STREET, SUITE 2520 |
| CITY/STATE/ZIP: CHICAGO, IL 60602 | CITY/STATE/ZIP: CHICAGO, IL 60602 |
| TELEPHONE NUMBER: 312-372-4784 | TELEPHONE NUMBER: 312-372-4784 |
| FAX NUMBER: | FAX NUMBER: |
| E-MAIL ADDRESS: | E-MAIL ADDRESS: |
| IDENTIFICATION NUMBER: 0817759 | IDENTIFICATION NUMBER: 0816108 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE: Cynthia Sutherin | SIGNATURE |
| NAME: CYNTHIA A. SUTHERIN | NAME |
| FIRM: FISHER AND FISHER | FIRM |
| STREET ADDRESS: 120 N. LASALLE STREET, SUITE 2520 | STREET ADDRESS |
| CITY/STATE/ZIP: CHICAGO, IL 60602 | CITY/STATE/ZIP |
| TELEPHONE NUMBER: 312-372-4784 | TELEPHONE NUMBER |
| FAX NUMBER: | FAX NUMBER |
| E-MAIL ADDRESS: | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER: 6256989 | IDENTIFICATION NUMBER |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |